UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

─────────────────────────────

KENNETH L. LAPSLEY

          Petitioner,                              Civil No. 11-20 (RHK/JSM)

    v.

UNITED STATES OF AMERICA                 **REPORT AND
RECOMMENDATION**

          Respondents.

─────────────────────────────

JANIE S. MAYERON, U.S. Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Petitioner's Motion to Vacate, Set Aside, or Correct Petitioner Sentence Pursuant to 28 U.S.C. 2241, 2255(e) under the Saving[s] Clause [Docket No. 1]; and Motion for Discovery to Request Production of Documents [Docket No. 14]. The matter has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL BACKGROUND

On June 14, 2000, a jury convicted Petitioner of being a felon in possession of a firearm in violation of Title 18, United States Code, Sections 922(g)(1). See Resp. Ex. 1 (Presentence Report), p. 1. In the Presentence Report ("PSR") prepared by the United States Probation Office ("USPO"), Petitioner was determined to be an armed career criminal under the provisions of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). See Resp. Ex. 1, p. 3, ¶ 20. The USPO based this finding on the following felony convictions: (1) manslaughter conviction by a jury on March 30, 1983; (2) a guilty

plea to Tampering with a Witness; and (3) a guilty plea to Making Terroristic Threats. Id., pp. 3-7, ¶¶ 24, 25, 30, 33.   Petitioner faced a mandatory minimum of 15 years imprisonment and a maximum of life imprisonment, with a guideline range of 235 to 293 months of imprisonment.  Id., ¶¶ 52-53.

Petitioner objected to a penalty enhancement under the ACCA, claiming in part, that because his conviction for witness tampering did not constitute a violent felony as required by the ACCA, he did not have the three predicate convictions necessary to trigger the enhanced penalties under the ACCA.  See Resp. Ex. 2 (Objection to Penalty Enhancement under ACCA), pp. 2-5.

Retired United States District Judge James M. Rosenbaum found the witness tampering conviction to be a violent felony and thus determined Petitioner to be an armed career criminal for the purposes of a sentencing enhancement.  He explained his decision as follows:

> The Court is of a mind that witness tampering falls within the contemplation of the violent statutes, or the violent acts within the contemplation of the guidelines, and for sentencing enhancement purposes.  The Court has clear in mind the extraordinarily difficult circumstances that existed between the plaintiff and the Victim, the Witness tampererer, or the defendant, and the victim of the witness tampering. I'm aware that there was a great deal of violence and personal injury that took place between them. There is no question that the threat in this case was directed to her, not to incapacitate her car, not to make it so she couldn't take the bus, but to threaten her physically. That she wouldn't make it to the sentencing. On that basis, it seems to me appropriate to include that.
>
> * * *
>
> What we're talking about here is the existence of a prior conviction. And that prior conviction is res judicata. It exists, it is certified in the records of the state of Minnesota. It was not proven at trial because in fact there was no -- there was an explicit wish that we limit the number of prior convictions.

> And this Court at the behest of the defendant limited the
> amount of prior criminal material that would be provided to
> the defense -- or provided to the jury touching the defendant.
> But there was no question that those prior events occurred.
> But in an effort to eliminate prejudice to the defendant, those
> items were kept out of the act of proof before the, or before
> the jury. With those thoughts in mind it is appropriate, in this
> Court's view, to put the enhancement in place. And on that
> basis, the sentence may be enhanced as requested.  Now,
> the defense's view that the statutory language, which could
> touch on matters involving property, that is certainly a fact,
> but in this case, it was not a property matter, it was a threat
> directed at a person individually. A threat to which the
> defendant pleaded guilty. Under those circumstances, it
> qualifies as a violent felony in this Court's view within the
> contemplation of 4Bl.4.

Resp. Ex. 5 (Sentencing Transcript), pp.  6-8.  Judge Rosenbaum sentenced Petitioner

to a 235-month term of imprisonment.  Id., p. 16.  Without enhancement, the maximum

sentence for a violation under 18 U.S.C. § 922(g) is ten years.  See 18 U.S.C.  §

924(a)(2).

Petitioner appealed his conviction to the Eighth Circuit, his case was remanded

back to the District Court, the conviction was affirmed, he appealed again to the Eighth

Circuit, which affirmed the District Court, and a petition for writ of certiorari was issued

and was denied by the United States Supreme Court.  See United States v. Lapsely,

263 F.3d 839 (8th Cir. 2001); United States v. Lapsley, 334 F.3d 762 (8th Cir. 2003)

(from a remand to the district court on the issue of a disclosure of an informant), cert.

denied 540 U.S. 1186 (U.S. Feb. 23, 2004).

On September 3, 2004, Petitioner filed a pro se § 2255 habeas petition seeking

to vacate, set aside or correct his sentence.  United States v. Lapsley, Nos. 99-CR-252

(JMR/ESS), 04-CV-4028 (JMR/JSM), 2005 WL 1806360 (D. Minn., July 28, 2005).[1] Later, Petitioner moved to amend his pending § 2255 petition to add claims that the court's earlier finding that he was an armed career criminal violated Shepherd v. United States, 125 S.Ct. 1254 (2005), and that the witness tampering charge was not a violent felony under the ACCA.  Lapsley, 2005 WL 1806360 at *11; see also Lapsley v. United States, File No. 99-CR-252 (JMR/ESS) [Docket Nos. 170, 188].

On July 28, 2005, the District Court denied Petitioner's motion finding in relevant part:

> Finally, Mr. Lapsley argues that the Court's decision to sentence him as an armed career criminal violated the Supreme Court's directive in Shepherd v. United States, --- U.S. ----, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). In Shepherd, the court held that a sentencing court attempting to determine whether an earlier offense was violent for the purposes of 18 U.S.C. § 924(e), could look only to the statutory elements, the charging documents, the defendant's admissions at his change of plea hearing, and accepted findings of fact confirming the factual basis of the guilty plea. Shepherd, 125 S.Ct. at 1263. Here, Mr. Lapsley argues that the Court considered matters not permitted by Shepherd in finding his 1991 conviction was a violent offense.
>
> Shepherd was decided on March 7, 2005, more than a year after Mr. Lapsley's conviction became final. Mr. Lapsley has cited no case, and this Court is aware of none, holding that Shepherd applies retroactively. Indeed, Shepherd follows Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), see Shepherd, 124 S.Ct. at 1262-63, and Apprendi is not retroactive. United States v. Moss, 252 F.3d 993, 997 (8th Cir.2001), cert. denied, 534 U.S. 1097, 122 S.Ct. 848, 151 L.Ed.2d 725 (2002); see also Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 2526, 159

---

[1]     Petitioner's § 2255 Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody was filed in File No. 04-cv-04028, which was opened for "Statistical Purposes Only," (see text in Docket No. 1), and in File No. 99-CR-252 (JMR/ESS), which was the original criminal file.   The various citations in this Report and Recommendation regarding to the first § 2255 petition derive from File No. 99-CR-252 (JMR/ESS).

L.Ed.2d 442 (2004) (<u>Ring v. Arizona</u>, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) which relied on <u>Apprendi</u>, not retroactive); <u>Booker v. United States</u>, --- U.S. ----, ----, 125 S.Ct. 738, 769, 160 L.Ed.2d 621 (2005) (same, for <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) which relied on <u>Apprendi</u>).

Even if retroactive, <u>Shepherd's</u> directives were not violated. <u>Shepherd</u> allows the sentencing Court to consider the complaint, plea agreement, transcript or "some comparable judicial record." 125 S.Ct. at 1263.   At sentencing, the government submitted Mr. Lapsley's 1991 state court plea agreement, complaint, judgment, and guilty plea transcript relating to the offense of witness tampering. The witness was Mary Riley, Mr. Lapsley's wife. Minnesota's witness tampering statute provides that the crime can be committed by "means of force or threats of injury to any person or property." Minn. Stat. § 609.498, subd. 1. At sentencing, Mr. Lapsely claimed that, because the statute, in general, allows conviction for making threats of injury to property, his conviction should not be considered a violent felony. His guilty plea transcript, however, clearly delineates the facts underlying his conviction: his crime involved threats of personal violence. (1991 Plea Tr. at 6-7.) He admitted telling his wife "you're not going to be able to press charges because you're not going to be able to make it to Court[.]" (<u>Id.</u>) In finding Mr. Lapsley's 1991 witness tampering conviction to be a crime of violence, the court relied on his admissions in state court (Sent Tr., 5-7) and its knowledge of his violent relationship with his wife, as documented in the presentence report to which he did not object. (<u>Id.</u>) Accordingly, the Court used the information learned at trial, the unchallenged statements in the presentence report, and the guilty plea transcript in deciding that the 1991 conviction was for a violent offense.

<u>Lapsley</u>, 2005 WL 1806360 at *11-12.

The district court refused to issue a certificate of appealability because Lapsley failed to make a "substantial showing of the denial of a constitutional right."  <u>Id.</u> at *12.

Lapsley appealed to the Eighth Circuit, which denied application for certificate of

appealability and dismissed the appeal.   Id. [File No. 99-CR-252 (JMR/ESS) Docket Nos. 193, 195].

In his present habeas Petition, Petitioner argued that pursuant to Johnson v. United States, 130 S.Ct. 1265 (2010), Minnesota's state statute for tampering with a witness in the first degree does not qualify as one of the specific crimes listed in the definitions of 18 U.S.C. § 924(e)(2)(B)(i).   See Motion to Vacate, Set Aside or Correct Petitioner Sentence Pursuant to 28 U.S.C. § 2241, 2255(e) under the saving[s] clause [Docket No. 1] ("Petition"), pp. 1-3.   While Petitioner acknowledged that he had previously raised the issue of whether his conviction under Minnesota's witness tampering statute rose to the level of a violent felony under the ACCA, Petitioner submitted that the holding in Johnson should be applied retroactively to allow him to reassert his claim under the savings clause set forth in 28 U.S.C. 2255(e).   Id., pp. 3-4, 7.

In support, Petitioner argued that in examining whether the Minnesota witness tampering statute qualifies as a violent felony under ACCA, the Court should look at the fact of the conviction, along with the elements of the offense, and should generally not consider the facts disclosed by the record of the conviction.   Id., p. 4 (citing James v. United States, 550 U.S. 192 (2007)).   Relying on Johnson and also on Begay v. United States, 553 U.S. 137 (2008), Petitioner then asserted that crimes falling under the ACCA must constitute a violent felony, as determined by the elements of the offense, or the offense at issue must be similar in kind to those enumerated in the ACCA (such as burglary, arson, extortion and crimes involving explosives).   Id., pp. 5-6.   To the extent that the crime contains statutory language that in some cases requires a finding of

violent force, Petitioner argued that a modified categorical approach must be taken, which allows a court to look at the facts of a conviction. Id., p. 6 (citations omitted).

As to the particular facts of his case, Petitioner noted that the victim (his wife) and another witness (his sister) recanted their statements and refused to cooperate with the state prosecutor, which ultimately led to the negotiated guilty plea for witness tampering. Id., p. 9. Petitioner acknowledged that he pled guilty to making the statement to his wife, "that's alright you're not going to be able to press charges because you're not going to be able to make it to court." Id. Petitioner asserted that neither the state prosecutor nor the state district judge ever asked Petitioner what he meant by this statement, and there was nothing in this statement that he made while in police custody that demonstrated he intended to threaten physical harm; rather it could have been made merely in anger and with no risk of danger to anyone. Id., pp. 9-10. For example, Petitioner claimed that he could have meant that he wanted to set the victim's vehicle on fire, which would not constitute a violent felony. Id. According to Petitioner, he only admitted to making a statement and there were no express threats of injury or threats of violence or physical force in it, as required by § 924(e). Id., p. 10. In addition, Petitioner contended that the information contained in the PSR contained false information that may have been used to prejudice him at the sentencing hearing, including that his wife recanted her statement because Petitioner had been taken to the hospital for a suicide attempt. Id., p. 12.

By way of relief, Petitioner seeks to be resentenced without the application of the ACCA or his immediate release. Id., p. 13.

In opposition, Respondent noted that the statute governing Petitioner's first-degree witness tampering offense requires the use or threat of "injury to any person or property." See Respondent's Return to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Respondent's Mem.") [Docket No. 7], pp. 7-8 (quoting Minn. Stat. § 609.498, subd. 1(a)).   Respondent argued that Petitioner's reliance on Begay is misplaced because the Supreme Court in that case addressed the "residual clause" of § 924(e)(2)(B)(ii), which provides that a "violent felony" includes burglary, arson, extortion, an offense involving the use of explosives or other conduct presenting a serious potential risk of harm to another.   Id., pp. 8-9. Here, however, Petitioner's ACCA enhancement was predicated on § 924(e)(2)(B)(i), which provides that a "violent felony" includes a crime punishable for a term exceeding one year that has an element of the use, attempted use or the threatened use of physical force against another person.   Id., p. 9.  Nevertheless, even if Petitioner's ACCA enhancement was based on the residual clause, Respondent asserted that extortion is comparable to witness tampering in that both pose the choice of complying with a threat or being harmed.   Id.

Respondent also took issue with Petitioner's reliance on the Supreme Court's decision in Johnson for the proposition that his witness tampering conviction lacked the "substantial degree of force" or "violent felony" status.   Id., p. 10.   Respondent maintained that the Johnson Court defined "violent force" as a force capable causing physical pain or injury to another person," and that the requirement of the use of force or threat of injury set forth in Minn. Stat. § 609.498 and the Minnesota Jury Instruction for the offense reaches the threshold required by Johnson.   Id.

Respondent also distinguished <u>Johnson</u>, submitting that the case dealt with a Florida battery statute that include generic battery offenses, many of which dealt with misdemeanor offenses, whereas here, Respondent was convicted of first degree tampering under Minn. Stat. § 609.498. subd. 1, and not Minn. Stat. § 609.498 subd. 2, which is for a gross misdemeanor second degree tampering violation. <u>Id.</u>, p. 11.

As for Petitioner's assertion that Minn. Stat. § 609.498 cannot qualify as a violent felony because it encompasses threats to the injury of property, Respondent argued that 18 U.S.C. § 16 defines a "crime of violence" as one that includes the threatened use of physical force against the person or property of another. <u>Id.</u> Further, even using the "modified categorical approach," which allows a court to examine plea agreements or transcripts of plea colloquies, shows that the Petitioner's witness tampering involved threats against a person individually. <u>Id.</u>, pp. 11-12 (citing <u>Johnson</u>, 130 S.Ct. at 1273).

In his reply, Petitioner made the following arguments:

- While a court could look to the underlying record, it can only do so in order to determine which portion of a statute underlies a conviction. <u>See</u> Petitioner's Response to the Government's Answer to his Motion Pending 28 U.S.C. 2241 [Docket No. 11] ("Petitioner's Reply"), pp. 2-4.

- The Minnesota statute for tampering with a witness in the first degree is not one of the crimes listed or included in the definition of a violent felony under § 924(e)(2)(b)(i) or (ii). <u>Id.</u>, p. 4.

- Under the Minnesota statute, a defendant can be convicted of witness tampering without proof of force or threats of physical injury against a person. This does not comport with the definition of "physical force" under § 924(e), which under its ordinary meaning means a degree of power. <u>Id.</u>, p. 5.

- The sentencing court violated <u>Taylor v. United States</u>, 495 U.S. 575 (1990), by failing to examine the statutory definition and the facts of the tampering conviction, and instead relied on the particular facts underlying that conviction, such as the personal history and relationship between the victim

and the Petitioner as set forth in the PSR, which relied on police reports.[2] Id., pp. 6-7, 17-19.

- The 1991 criminal complaint against him made it clear that there was no threat of physical force against a person--only that he predicted that his wife would not make it to court without saying why. Id., p. 10. Petitioner contended he could have meant anything when he made that statement. Id., p. 10.

- The prosecutor did not charge him with the more serious aggravated first-degree witness tampering under Minn. Stat. § 609.498, sub. 1b. Id., pp. 10-11.

- Petitioner acknowledged that the prosecutor in the state action asserted that Petitioner intentionally dissuaded a witness by means of force or threats of injury and did so to dissuade her from providing information to law enforcement. Id., p. 11. Nonetheless, the prosecutor did not specify what he meant or whether the threat was to person or property and this ambiguity means that the tampering conviction does not qualify as a predicate under § 924(e)(2)(B)(i). Id., pp. 11-12.

- Petitioner also pointed to several cases including United States v. Howell, 531F.3d 621, 624 (8th Cir. 2008) for the requirement that bodily harm must be demonstrated, and United States v. Neal, Crim. No. 99-101 (MJD/JGL), which held that tampering with a witness is not a violent felony. Id., pp. 13-15.

## II.   ANALYSIS

### A.   Applicability of the Savings Clause

A federal inmate generally must assert a collateral challenge to a conviction or sentence through a § 2255 petition. Additionally, as a general rule, the federal inmate is precluded from bringing successive § 2255 petitions. However, the savings clause in 28 U.S.C. § 2255(e)[3] permits a petition under 28 U.S.C. § 2241 if the § 2255 remedy is

---

[2]      Petitioner noted that he raised this issue before the sentencing judge as part of seeking relief under § 2255. Petitioner's Reply, pp. 7-8.  .

[3]      Section 2255(e) provides:

"inadequate or ineffective" to test the legality of a conviction or a sentence.  Lopez-

Lopez v. Sanders, 590 F.3d 905, 907 (8th Cir. 2010).   In order to establish that a

remedy is "inadequate or ineffective" under § 2255, a petitioner cannot rely on that fact

that there is a procedural barrier to bringing a § 2255 petition, such as a remedy being

time-barred, and the petition cannot be based on the assertion that the claim was

previously raised in a § 2255 motion and denied.  See Abdullah v. Hedrick, 392 F.3d

957, 959 (8th Cir. 2004) (citations omitted); see also Hill v. Morrison, 349 F.3d 1089,

1091-92 (8th Cir. 2003); United States v. Lurie, 207 F.3d 1075, 1077 (8th Cir. 2000)

(citations omitted) (§ 2255 will not be viewed as inadequate or ineffective "merely

because § 2255 relief has already been denied, ... or because petitioner has been

denied permission to file a second or successive § 2255 motion ... or because a second

or successive § 2255 motion has been dismissed, ... or because petitioner has allowed

> (e) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

   While Respondent did not challenge the ability of Petitioner to bring his Petition under § 2255(e), this Court has the ability to raise the issue of whether it has the jurisdiction to entertain the Petition sua sponte.  See Matias v. Jett, Civil No. 12–63 (MJD/LIB), 2012 WL 983683 at *2 (D. Minn. Jan. 13, 2012) ("A federal court lacks jurisdiction to hear a prisoner's collateral challenge to his original conviction or sentence under 28 U.S.C. § 2241, unless the prisoner has affirmatively demonstrated that the remedy provided by § 2255 "'is inadequate or ineffective to test the legality of ... [his] detention.'" (quoting DeSimone v. Lacy, 805 F.2d 321, 323 (8th Cir.1986) (per curiam), quoting 28 U.S.C. § 2255).

the one year statute of limitations and/or grace period to expire."). Nor is § 2255 inadequate or ineffective, thereby allowing a prisoner to challenge his conviction or sentence in a § 2241 habeas corpus petition, "where a petitioner had any opportunity to present his claim beforehand." Abdullah, 392 F.3d at 963; see also Hill, 349 F.3d at 1092 (§ 2255 is not an inadequate or ineffective remedy where the petitioner had "at least two opportunities to raise [his] argument before the sentencing court").

On the other hand, "[a] federal prisoner should be permitted to seek habeas corpus [under § 2241] only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." In re: Davenport, 147 F.3d 605, 611 (7th Cir. 1998); see also Matias, 2012 WL 983683 at *2 (same); Allowitz v. English, Civil No. 11-3680 (RHK/TNL), 2011 WL 7112655 at * 3 (D. Minn. Dec. 30, 2011) (same).

In the instant Petition, in addition to relying on Johnson to support his contention that his sentence should not have been enhanced, Petitioner made several other challenges, including: information contained in the PSR contained false information that may have been used to prejudice him at the sentencing hearing; his wife recanted her statement; the sentencing court violated Taylor by failing to examine the statutory definition and the facts of the tampering conviction and instead relied on the particular facts underlying those convictions; the USPO manipulated his PSR in the favor of the Government; he made no express threats of injury or threats of violence; and he could have meant several different outcomes by his statement, none of which constitute a violent felony. See Petitioner's Mem., p. 12; Petitioner's Reply, pp. 6-7, 17-19, 22, 23.

Aside from his challenge based on <u>Johnson</u>, which was decided after his initial § 2255 petition, none of Petitioner's other contentions establish that his § 2255 petition was inadequate or ineffective.  Petitioner essentially raised his <u>Taylor</u> challenge in his previous § 2255 motion, in which he relied on the more recent case by the Supreme Court in <u>Shepard v. United States</u>, 125 S.Ct. 1254 (2005), and that challenge was rejected by the District Court.  <u>See Lapsley</u>, 2005 WL 1806360 at *11.  This Court cannot find that § 2255 was inadequate or ineffective merely because § 2255 relief has already been denied.  <u>See Lurie</u>, 207 F.3d at 1077; <u>see also Larson v. United States</u>, 905 F.2d 218, 222 (8th Cir. 1990) (collateral attack on prisoner's conviction must be summarily dismissed where the prisoner "does no more than disagree with the previous habeas court").  Similarly, in his previous § 2255 petition, Petitioner argued that because Minnesota's tampering statute allows for a conviction for making threats of injury to property, his conviction should not have been considered a violent offense for the purposes of a sentence enhancement pursuant to ACCA.  <u>See Lapsley</u>, 2005 WL 1806360 at *11.  The District Court rejected this claim based on the information obtained in the sentencing transcript for the 1991 offense and its knowledge of his violent relationship as set forth in the PSR.  <u>Id.</u>

Additionally, there was nothing to preclude Petitioner from asserting in his first § 2255 petition a claim that the PSR contained false information that may have been used to prejudice him at the sentencing hearing.  Nor will the Court allow Petitioner via § 2255(e), to rehash his 1991 state conviction by asserting that he really only pled to making a statement, as opposed to making a threat.  As the Eighth Circuit Court of Appeals noted in <u>Abdullah</u>:

> [T]he Due Process Clause of our Constitution does not
> require that a petitioner have more than one unobstructed
> procedural opportunity to challenge his conviction. "That
> does not mean he took the shot, or even that he or his
> attorney recognized the shot was there for the taking. All the
> Constitution requires, if it requires that much, is that the
> procedural opportunity have existed."

392 F.3d at 963 (quoting Wolford v. Scott, 177 F.3d 1236, 1244 (11th Cir. 1999)).

Based on Abdullah, the Court finds that the savings clause is not applicable to these

claims.

As for Petitioner's argument premised on Johnson, where the Supreme Court

held that a defendant's prior battery conviction under Florida law was not a "violent

felony" under the ACCA, the Court concludes that this intervening decision regarding

the definition of "violent felony" could negate the basis of an enhanced sentence.

Therefore, because Petitioner's enhanced sentence was longer than the statutory

maximum for conviction of felon in possession of a firearm, the Court finds that the

savings clause applies and it will consider the Petition.  See Gilbert v. United States,

640 F.3d 1293, 1323 (11th Cir. 2011) (en banc) (concluding that the savings clause

does not authorize a federal prisoner to bring a § 2241 petition, which would otherwise

be barred by § 2255(h), based on intervening case law such as Begay and Johnson,

unless the sentencing guidelines were misapplied in a way that resulted in a longer

sentence exceeding the statutory maximum); see also Talbott v. Fisher, Civil No. 10-

1553 (PJS/JJK), 2010 WL 5313479 at *1 (D. Minn. Dec. 20, 2010) (the government

conceded and the court agreed that the petition fit within § 2255(e) where an intervening

Supreme Court decision of statutory construction "negates the basis for the imposition

of an enhanced penalty ab initio as a matter of law, the defect is sufficiently fundamental

to justify § 2241 relief when the effect of the sentencing enhancement increases the statutory maximum for defendant's offense of conviction.") (citation and marks omitted); see generally, Sun Bear v. United States, 644 F.3d 700, 705-06 (8th Cir. 2011) (en banc) (finding that because the increased sentence under the ACCA was still within the statutory maximum authorized for the offense of second-degree murder, there was no miscarriage of justice and the denial of the 28 U.S.C. § 2255 motion to vacate the petitioner's sentence was appropriate).

Accordingly, this Court considers the merits of Petitioner's challenge based on Johnson.

### B. Witness Tampering as a Violent Felony under the ACCA

As stated previously, Petitioner asserts that his 1991 conviction for witness tampering does not qualify as a "violent felony" as set forth in the ACCA and as interpreted by the United States Supreme Court in Begay and Johnson. The ACCA provides in relevant part that:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

18 U.S.C. § 924(e)(2)(B) (emphasis added).

In Begay, the United States Supreme Court held that driving under the influence of alcohol ("DUI") was not a violent felony contemplated by § 924(e)(2)(B)(ii), otherwise known as the "residual clause."   In making this finding, the Supreme Court noted that while the example crimes of burglary, arson, extortion, and crimes involving the use of explosives "all typically involve purposeful, 'violent,' and 'aggressive' conduct," state statutes like New Mexico's DUI statute, "typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all."   553 U.S. at 144-45.   The Supreme Court explained its rationale as follows:

> When viewed in terms of the Act's basic purposes, this distinction matters considerably. As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun. See Taylor, supra, at 587–588, 110 S.Ct. 2143; 470 F.3d, at 981, n. 3 (McConnell, J., dissenting in part) ("[T]he title [of the Act] was not merely decorative"). In order to determine which offenders fall into this category, the Act looks to past crimes. This is because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun.
>
> In this respect—namely, a prior crime's relevance to the possibility of future danger with a gun—crimes involving intentional or purposeful conduct (as in burglary and arson) are different than DUI, a strict liability crime. In both instances, the offender's prior crimes reveal a degree of callousness toward risk, but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger. We have no reason to believe that Congress intended a 15–year mandatory prison term where that increased likelihood does not exist.

Were we to read the statute without this distinction, its 15–year mandatory minimum sentence would apply to a host of crimes which, though dangerous, are not typically committed by those whom one normally labels "armed career criminals." See, e.g., Ark. Code Ann. § 8–4–103(a)(2)(A)(ii) (2007) (reckless polluters); 33 U.S.C. § 1319(c)(1) (individuals who negligently introduce pollutants into the sewer system); 18 U.S.C. § 1365(a) (individuals who recklessly tamper with consumer products); § 1115 (seamen whose inattention to duty causes serious accidents). We have no reason to believe that Congress intended to bring within the statute's scope these kinds of crimes, far removed as they are from the deliberate kind of behavior associated with violent criminal use of firearms. The statute's use of examples (and the other considerations we have mentioned) indicate the contrary.

\* \* \*

The distinction we make does not minimize the seriousness of the risks attached to driving under the influence. Nor does our argument deny that an individual with a criminal history of DUI might later pull the trigger of a gun. (Indeed, we may have such an instance before us. 470 F.3d, at 965.) Rather, we hold only that, for purposes of the particular statutory provision before us, a prior record of DUI, a strict liability crime, differs from a prior record of violent and aggressive crimes committed intentionally such as arson, burglary, extortion, or crimes involving the use of explosives. The latter are associated with a likelihood of future violent, aggressive, and purposeful "armed career criminal" behavior in a way that the former are not.

We consequently conclude that New Mexico's crime of "driving under the influence" falls outside the scope of the Armed Career Criminal Act's clause (ii) "violent felony" definition.

Id. at 146-48.

In 2010, the United States Supreme Court in Johnson was asked to determine whether a conviction for "simple battery" under Florida's criminal statutes constituted a violent felony conviction under § 924(e)(2)(B)(i) of the ACCA.  In this case, Johnson objected to counting his 2003 battery conviction as a violent felony for the purposes of

CASE 0:11-cv-00020-RHK-JSM   Document 19   Filed 06/06/12   Page 18 of 25

the ACCA, where that conviction was for simple battery under Florida law, which ordinarily is a first-degree misdemeanor, (Fla. Stat. § 784.03(1)(b)), but is a third-degree felony for a defendant who has been previously convicted of battery (even simple battery). 130 S.Ct. at 1269. The Supreme Court examined the substantive elements of the criminal offense to determine whether a felony conviction for battery under Florida law met the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(i). Id. at 1270 (citing Jackson v. Virginia, 443 U.S. 307, 324, n. 16 (1979)).

Under the applicable Florida statute, a battery occurs when a person either "'1. [a]ctually and intentionally touches or strikes another person against the will of the other,' or '2. [i]ntentionally causes bodily harm to another person.'" Id. at 1269 (quoting Fla. Stat. § 784.03(1)(a)). The Supreme Court noted that under Florida jurisprudence, the element of "actually and intentionally touching" is satisfied by any intentional physical contact, no matter how slight the contact, even if it is merely a tap on the shoulder without consent. Id. at 1269-70 (citations omitted). The Court then determined that in the "context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." Id. at 1271. The Court concluded that since Florida's simple battery statute, which was normally a misdemeanor, was satisfied by any intentional physical contact, even mere touching, it did not have as a requisite element the application of the degree of physical force that would qualify it as a violent felony under § 924(e)(2)(B)(i) of the ACCA. Id. at 1271-74.

In this case, Petitioner pled guilty to a charge of Tampering with a Witness under Minn. Stat. § 609.498, subd. 1(d). See Resp. Ex. 4 (Government's Response to

Defendant's Sentencing Position, Ex. 3 (state sentencing transcript)).  This statute provides in relevant part:

> Tampering with witness in the first degree. Whoever does any of the following is guilty of tampering with a witness in the first degree and may be sentenced as provided in subdivision 1a:
>
> * * *
>
> (d) <u>intentionally</u> prevents or dissuades or attempts to prevent or dissuade, <u>by means of force or threats of injury to any person or property</u>, a person from providing information to law enforcement authorities concerning a crime; . . .

Minn. Stat. § 609.498, subd. 1(d) (emphasis added).

Although there is no Minnesota case law directly on point defining "threats of injury" under § 609.498, subd. 1(d), the Minnesota Court of Appeals in <u>State v. Wilking</u>, No. C6-02-545, 2002 WL 31370278 (Minn. Ct. App. Oct. 22, 2002) addressed the meaning of this phrase under § 609.498, subd. 1(a).  This subdivision uses the substantially the same language as subdivision 1(d), but instead applies to persons charged with preventing or dissuading witnesses from appearing at trial or other proceedings:

> (a) <u>intentionally</u> prevents or dissuades or intentionally attempts to prevent or dissuade <u>by means of force or threats of injury to any person or property</u>, a person who is or may become a witness from attending or testifying at any trial, proceeding, or inquiry authorized by law.

Minn. Stat. § 609.498, subd. 1(a) (emphasis added).

In <u>Wilking</u>, the Minnesota Court Appeals analyzed whether the phrase "threats of injury" could be interpreted to include "economic" injury or whether the phrase was just

limited to "physical" injury.[4]   2002 WL 31370278 at *2.   Based on the canons of construction, the appellate court found that "the legislature evidently intended the threats to be limited to some form of physical injury," given that the dictionary most commonly defines injury as "damage or harm" and concluded that the verb to "injure" "is most commonly defined as 'to cause physical harm to.'"  Id. at *3 (quoting The American Heritage College Dictionary 700 (3d ed.1997)).   As to the phrase "by means of force" used in the statute, the court of appeals reasoned that this "further suggests that the legislature intended the crime to involve a physical or other tangible instrumentality. Force is most commonly defined as the capacity to cause 'physical change' and as the 'use of physical power or violence to compel or restrain.'"   Id. (quoting The American Heritage College Dictionary at 531).

Thus, unlike the Florida battery law in Johnson, where any touching could constitute an offense, this Court finds that the Minnesota witness tampering statute requires a threat of physical injury to a person or property.[5]  As stated previously, the

---

[4]    Federal Courts look to state courts for interpretation of state law.  See Johnson, 130 S.Ct. at 1269 (citing Johnson v. Fankell, 520 U.S. 911, 916 (1997)).   Conversely, the meaning of federal statutes "is a question of federal law, not state law."  Id.

[5]    In his Petition for Writ of Mandamus [Docket No. 18] at 3, Petitioner cited to a case out of this District, and a number of Eighth Circuit cases that have relied on the Supreme Court's ruling in Johnson, including Turner v. Fisher, Civ. No. 10-4353 (JNE/SER), 2011 WL 5176808 (D. Minn. Oct. 31, 2011); Talbott v. Fisher, 439 Fed. Appx. 564 (8th Cir. 2011); United States v. Vinton, 631 F.3d 476 (8th Cir. 2010); United States v. Sampson, 606 F.3d 505, 511 (8th Cir. 2010); United States v. Abari, 638 F.3d 847 (8th Cir. 2011); United States v. Lee, 625 F.3d 1030 (8th Cir. 2010); United States v. Ossana, 638 F.3d 895 (8th Cir. 2011), after remand in United States v. Ossana, --- F.3d ----, 2012 WL 1724085 at *3-4 (8th Cir. May 17, 2012) (affirming the district court's decision, after remand, that based on the plea colloquy, the aggravated assault conviction qualified as "crime of violence."); United States v. Scudder, 648 F.3d 630 (8th Cir. 2011); United States v. Forrest, 611 F.3d 908 (8th Cir. 2010).  Although these cases cite to Johnson, none concluded that the offenses at issue did not qualify as "violent felonies" under the Supreme Court's ruling.

Supreme Court in <u>Johnson</u> concluded that in the "context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, <u>force capable of causing physical pain or injury to another person</u>."[6]   130 S.Ct. at 1271 (emphasis added).   Given the requirement for the threat of physical injury under Minn. Stat. § 609.498, subd. 1, the Court finds that the offense constitutes a "violent felony" for the purposes of § 924(e)(2)(B)(i).[7]

---

[6]   Petitioner's reliance on <u>United States v. Howell</u>, 531 F.3d 621, 624 (8th Cir. 2008) is misplaced given that the case involved 18 U.S.C. §§ 922(g)(9) and 924(a)(2), as opposed to § 924(e).   Petitioner's reliance <u>United States v. Wilson</u>, 562 F.3d 965, 967 (8th Cir. 2009) also has no application, as the felony offense of endangering the welfare of a child could involve creating a substantial risk to a child's life, body or health through knowing actions that are neither violent nor aggressive, whereas the Minnesota witness tampering offense requires a physical injury or the threat of injury.

[7]   Even if this Court accepted Petitioner's claim that his conviction could have been for a threat to property, the Court finds that under a modified categorical approach, which permits examination of certain court-related materials to determine the set of elements of an offense a defendant had been found to have violated, Petitioner's claim finds no support in the record.   <u>See</u> <u>Johnson</u>, 130 S.Ct. at 1273 (citing <u>Nijhawan v. Holder</u>, 129 S.Ct. 2294, 2302 (2009), citing <u>Taylor</u>, 495 U.S. at 602).   In determining "which statutory phrase was the basis for the conviction," a court may consult "the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms."   <u>Id.</u> (citing <u>Taylor</u>, 495 U.S. at 602) (citations omitted).   The plea and sentencing transcript from the witness tampering conviction show that Petitioner had been initially charged with attempted murder and assault against a woman (who became his wife), which involved him pointing a gun to her head and pulling the trigger.   <u>See</u> Resp. Ex. 4 (Ex. 3 Guilty Plea Transcript) ("Tr."), 5.   Petitioner's sister was a witness to the crime.   Tr. 9.   Petitioner acknowledged making the following statement to his wife, "[y]ou're not going to be able to press charges because you're not going to be able to make it to the court."   Tr. 6.   There was an allegation that Petitioner was going to get another person to "do it."   <u>Id.</u>   Both the victim and Petitioner's sister thereafter represented that they did not want to participate in the prosecution, that they had lied about their earlier statements, and they were reluctant to testify against Petitioner.   Tr. 9-10.   The prosecutor stated that a plea deal had been reached that called for Petitioner to plead guilty to allegations that he "intentionally prevented or dissuaded <u>a witness</u> by means of force or threats injury. . . ."   Tr. 2 (emphasis added).   There is no reference to property anywhere in the charging documents or the plea transcript.   It is clear that

The Court also concludes that Minn. Stat. § 609.498, subd. 1 falls within the ambit of § 924(e)(2)(B)(ii).   For a prior felony offense to fall within the scope of § 924(e)(2)(B)(ii), such an offense must (1) "pose a similar degree of risk of physical injury as the example crimes," and (2) "be similar in kind to the example crimes."   United States v. Williams, 537 F.3d 969, 972 (8th Cir. 2008) (citing Begay, 128 S.Ct. at 1585-86).   Subsequent to Begay, the Supreme Court explained that the subject crime "involves the requisite risk" when that crime presents a risk of injury "'comparable to that posed by its closest analog among the enumerated offenses.'"   Sykes v. United States, --- U.S. ----, 131 S.Ct. 2267, 2273 (2011) (quoting James v. United States, 550 U.S. 192, 203 (2007)).

Here, the felony for tampering with a witness, which involves threatening physical harm to an individual who is providing information to law enforcement, is most similar to the enumerated crime of extortion in § 924(e)(2)(B)(ii).   The Supreme Court has determined that extortion constitutes "'purposely' obtaining property of another through threat of, e.g., inflicting 'bodily injury.'"   See Begay, 553 U.S. at 145 (quoting ALI Model Penal Code § 223.4 (1985)).   Both offenses of extortion and witness tampering employ the threat of harm to achieve the desired goals.   The only difference between extortion and witness tampering is the result sought from the threats of physical injury—property versus victim or witness cooperation.

Finally, while the DUI offense in Begay involved a crime of negligence or recklessness. (553 U.S. at 145-46), here, Petitioner pled guilty to intentionally making a threat to his wife.   See State v. Collins, 580 N.W.2d 36, 44 (Minn. Ct. App. 1998), rev.

---

Petitioner was making a direct threat to his wife to the extent she wanted to press charges.

denied (July 16, 1998) ("Under section 609.02, subdivision 9(3), the use of the word "intentionally" makes witness tampering a specific intent offense.") (citation omitted). The ACCA looks to past crimes, as it is "relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun." Begay, 553 U.S. at 146.  While a DUI can obviously result in harm, possessing a gun would not increase the danger the offender that the statute was meant to address.  On the other hand, the possession of firearm by an individual who make threats to witnesses, increases the likelihood that the offender could carry out the threat in a deadly manner or increase the efficacy of the threat.  Id. ("[T]he Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun.") (citation omitted).

For all of these reasons, the Court concludes that Minn. Stat. § 609.498, subd. 1 falls under § 924(e)(2)(B)(ii).[8]

In summary, the Court concludes that Petitioner can bring a claim under the § 2255(e) savings clause because the Supreme Court's decision in Johnson could lead to a finding that his sentence should not have been enhanced.  Nevertheless, the Court finds that the Johnson decision does not change the fact that Petitioner's offense for

---

[8]     This Court notes that Minn. Stat. § 609.498 contains an aggravated first-degree witness tampering offense, which requires an "implicit or explicit credible threat, threatens to cause great bodily harm or death. . . ."  Minn. Stat. § 609.498, subd. 1b. However, the same statute contains lesser witness tampering offenses than that which Petitioner was convicted under subdivision 1, which are classified as gross misdemeanor and misdemeanors.  Id., subds. 2, 2a, 3.  Regardless, the fact that aggravated first-degree witness tampering results in a longer prison sentence and requires a threat to cause great bodily harm or death, does not change the fact that first-degree witness tampering requires an intentional threat of physical harm.

tampering with witness in the first degree is a violent offense under the ACCA. Thus, the Petition should be denied and dismissed with prejudice.

### C.   Motion to Compel

Petitioner has requested an order compelling the Government to provide him with a copy of the presentence report, the criminal complaint, and guilty plea involving a separate individual Andrew Neal, Crim. No. 99-101 (MJD/JGL). Petitioner asserted that on November 30, 1999, Judge Michael J. Davis held that Minn. Stat. § 609.498 (a)(1)(D) did not constitute a "crime of violence" under the meaning of U.S.S.G. § 4B1.1, which Petitioner claimed has virtually the same definition of a violent felony as under 18 U.S.C. § 924(e).

As a preliminary matter, the Court notes that Petitioner is not seeking the discovery of facts relevant to his Petition. In any event, Petitioner is referring to the judgment and statement of reasons given by Chief Judge Davis for imposing a sentence in Crim. No. 99-101 [Docket Nos. 51, 52]. Even if the statement of reasons stands for the proposition as set forth by Petitioner, the undersigned is not bound to reach the same conclusion, particularly where in that case the Government agreed as part of the plea agreement that witness tampering was not a crime of violence for the purposes of U.S.S.G. § 4B1.2. See Resp. Ex. 2, p. 4 n. 2. This Court is bound by the Supreme Court's decisions in Begay, Johnson and Sykes, all of which were issued well after the any unpublished statements in another case, and the Eighth Circuit decisions interpreting these decisions.

As such, Petitioner's motion to compel should be denied.

IV.     **RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1.      United States Magistrate Judge on Petitioner's Motion to Vacate, Set Aside, or Correct Petitioner Sentence Pursuant to 28 U.S.C. 2241, 2255 (e) under the saving clause  [Docket No. 1] be **DENIED**.

2.      Petitioner's habeas Petition be **DISMISSED WITH PREJUDICE**.

3.      Motion for Discovery to Request Production of Documents [Docket No. 14] be **DENIED**.

Dated:          June 6, 2012


s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 20, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.